IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **SOCIAL POSITIONING INPUT SYSTEMS, LLC**, <br><br> Plaintiff, <br><br> v. <br><br> **LANDAIRSEA SYSTEMS, INC.,** <br><br> Defendant. | Case No: 1:21-cv-04765 <br><br> Honorable Virginia M. Kendall <br><br> **JURY DEMAND** |

## MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Landairsea Systems, Inc. ("LAS") respectfully moves this Court to dismiss the Complaint (Dkt. 1) filed in this action for failure to state a claim upon which relief may be granted. Dismissal under Rule 12(b)(6) is necessary because the asserted claims of U.S. Patent No. 9,261,365 ("the '365 Patent") are directed toward patent-ineligible subject matter.

**I.     INTRODUCTION AND FACTS**

Claim 1 of the '365 Patent is directed toward the abstract idea of address or location sharing. The method described in Claim 1 relies upon routine steps and conventional technology to implement the abstract idea and is therefore patent-ineligible and invalid. *See* 35 U.S.C. §101; *see also Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014). Sharing address or location information is not a technological improvement, an inventive way of applying conventional technology, or even new. *See Wireless Media Innovations, LLC v. Maher Terminals, LLC*, 100 F. Supp. 3d 405 (D.N.J. 2015) (finding similar claims directed to the abstract idea of "monitoring locations, movement, and load status of shipping containers within a container-receiving yard, and

storing, reporting and communicating this information in various forms through generic computer functions").

Plaintiff's Complaint asserts infringement of "at least" Claim 1, but Plaintiff does not provide any analysis or specific allegations of infringement beyond its assertions directed toward Claim 1. *See* Dkt. 1, ¶13. Claim 1 of the '365 Patent includes only two steps, sending a request and receiving an address. The specific claim is as follows:

> 1. A method for receiving location information at a positional information device, the method comprising:
> sending a request from a requesting positional information device to a server for at least one address stored in at least one sending positional information device, the request including a first identifier of the requesting positional information device;
> receiving at the requesting positional information device, from the server, a retrieved at least one address to the requesting positional information device wherein the server determines a second identifier for identifying the at least one sending positional information device based on the received first identifier and retrieves the requested at least one address stored in the identified at least one sending positional information device.

Dkt. 1, Exhibit A at 13:55-14:2

When stripped of the superfluous pre- and post- solution elements, Claim 1 is nothing more than a simple ask and answer process of requesting and receiving a location. Claim 1, and indeed each of the claims of the '365 Patent, merely claims a method of using a computer to accomplish the abstract task. Nor is Claim 1 directed to an improvement in computer functionality. Rather, it is directed to "the use of conventional or generic technology in a nascent but well-known environment." *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612, 614 (Fed. Cir. 2016) ("[H]ere we need to only look to the specification, which describes the [components] as either performing basic computer functions such as sending and receiving data or performing functions 'known' in the art."). No particular non-conventional component or programming is either claimed or disclosed. Plaintiff's patent does no more than describe the basic idea of sending and receiving

2

information related to addresses without disclosing any novel application of that idea.

Instead, the approach for sharing address information described in the '365 Patent may be implemented using generic and conventional technology such as "communication protocols or systems currently existing . . . for wirelessly transmitting data." Dkt. 1, Exhibit A at 7:4-5. Indeed, the '365 Patent's specification makes clear that it does not make use of any novel components. *Id.* at 5:67-6:2 ("[s]uch input devices are standard and currently available on many electronic devices including portable digital assistants (PDAs) and cellular telephones."); 6:19-20 ("any other memory storage that exists currently"); *id.* at 7:20-21 ("conventional code encryption algorithms currently in use"); *id.* at 8:10-12 ("identity detection devices such as biometric devices are common and are currently widely in use").

In fact, the '365 Patent makes clear that the described "invention" can be accomplished, at least in part, through manual steps of a human operator. *See id.* at 9:29-32 ("[i]n one embodiment, the customer service center includes a live operator 303 that has access to server 304 **for looking up address information and transmitting the information to the device**") (emphasis added). This, while the applicant contends to have identified and solved problems associated with GPS devices which store addresses locally (*see id.* at 1:46-2:25), the claimed method itself merely implements an abstract idea using conventional components and communication systems that were known in the prior art. For example, while the specification describes a situation in which "[a] driver of a vehicle needs assistance in locating a point of interest such as a museum in a designated city" (i*d.* at 12:27-28), the applicant did not provide any technical details on how information is shared beyond what was known in the prior art and Claim 1 does not claim any components or steps beyond the abstract idea of requesting and receiving the address information.

In Claim 1, a requesting positional information device "send[s] a request . . . for at least

3

one address" to a server. The request includes "a first identifier" for identifying the requesting positional information device. The server obtains the requested address from a "sending positional information device." The sending positional information device is identified by a "second identifier." The positional information devices are understood to be GPS devices. *See id.* at Abstract ("a positional information device, **e.g., a global positioning system (GPS) device)** (emphasis added). In other words, Claim 1 recites a generic technique to establish a communications link between one or more devices and transfer information. No technical details are disclosed, much less claimed, as to how these processes are accomplished. Claim 1 simply recites generic and well-known hardware components performing standard functions.

## II.     LEGAL STANDARD FOR RULE 12(b)(6) MOTIONS ALLEGING PATENT INELIGIBILITY UNDER 35 U.S.C. § 101

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted." The Court must accept as true all well-pled factual allegations and view them in a light most favorable to the non-moving party. *Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768, 771 (N.D. Ill. 2016). Legal conclusions or conclusory allegations that merely recite a claim's elements are not entitled to any presumption of truth. *Id*. The Supreme Court cases of *Twombly* and *Iqbal*[1], as interpreted by the Seventh Circuit, require that the plaintiff "provide some specific facts to support the legal claims asserted in the complaint." *Id*. Plaintiffs must give enough details about the subject matter of the case to present a story that holds together. *Id*. Allegations that are merely consistent with, rather than suggestive of, an entitlement to relief, especially in the face of an obvious alternative explanation, fail that test. *Id*. Rule 12(b)(6) motions can be based on the complaint itself, documents critical to the

---

[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

4

complaint and referred to in it, and information subject to judicial notice. *Id*.

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Also, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and **abstract ideas**." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980) (emphasis added). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611-12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 573 U.S at 217. Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

5

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297-98, 1300-01; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191-92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

### III.   ARGUMENT

Plaintiff's Complaint should be dismissed. The claims of the '365 Patent are invalid under 35 U.S.C. § 101 because they fail both prongs of the *Alice* test. Each of the claims, and in particular the asserted Claim 1, is directed to the abstract idea of requesting and receiving address information. Abstract ideas are not eligible for patenting. None of the claims contains an "inventive concept . . . sufficient to ensure that the patent in practice amounts to **significantly more** than a patent upon the ineligible concept itself." *See Alice*, 573 U.S. at 217-18 (emphasis added) (quotations omitted). Because Plaintiff has failed to state a claim upon which relief may be granted, LAS respectfully requests that the Court grant its motion and dismiss this case with prejudice. Fed. R. Civ. P. 12(b)(6), 12(c).

6

### A. Claim 1 of the '365 Patent Is Directed Toward an Abstract Idea

In determining patent eligibility under § 101, the Court must first determine whether the claims are directed to an abstract idea. *Alice*, 573 U.S. at 217. Under any plausible reading, the claims of the '365 Patent are directed to an unpatentable, abstract idea because they claim nothing more than the longstanding, routine, and conventional concept of requesting and receiving address information. *See Alice*, 570 U.S. at 222; *Bilski*, 561 U.S. at 610-11 (prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment").

Claim 1 of the '365 Patent is directed to the abstract idea of requesting and receiving (*i.e.*, sharing) address information. Stripped of its generic terminology, the claim conceivably could cover any generic process of sharing address information. This is especially true given the purely functional nature of the claim language. Consider the following scenario. Albert wants to know the closest ABC Widget's location to his house, so he calls his friend Bob, an avid widget connoisseur, and tells Bob where he lives. Bob then looks up the locations of ABC Widget's stores in his phone book and tells Albert which one is closest to his house. Claim 1 is directed toward this same abstract request/receive method with the only change being that Albert is a "requesting positional information device"; Bob is a "server"; the ABC Widget store is the "sending positional information device"; and Bob's address and the distance to the ABC Widget locations are the first and second identifiers. Such a broad concept is not patent eligible because it "recite[s] an abstraction—an idea, having no particular concrete or tangible form." *Ultramercial*, 772 F.3d at 715.

Furthermore, the applicant's purported invention is not limited to any particular implementation. *See* Dkt. 1, Exhibit A at 4:16-20 ("it is to be understood the principles of the

present disclosure may be applied to any type of navigation or positional information device including but **not limited** to a vehicle-mounted device, a GPS receiver coupled to a desktop computer or laptop, etc."); *id.* at 9:25-29 ("Once connected to the customer service center, the user can communicate with the customer service center with voice communications or with a vehicle user interface (VUI) including but **not limited** to keyboard, voice recognition, or mouse or pointer") (emphasis added)). The specification, coupled with the broad functional language in Claim 1, confirms that Plaintiff's claims do not describe how to implement the allegedly claimed system, much less how to do so in any non-conventional manner. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (concluding that claim not directed to patent-eligible subject matter where "[t]he mechanism for maintaining the state is not described, although this is stated to be the essential innovation").

Additionally, the applicant's own characterizations demonstrate that the claimed components do not "improve the functioning of the computer itself," *Alice*, 573 U.S. at 225, for example by disclosing an "improved, particularized method of digital data compression," *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014), or improving "the way a computer stores and retrieves data in memory," *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016). For example, in *Enfish*, the Federal Circuit distinguished the claims from others that "simply add[ed] conventional computer components to well-known business practices," holding instead that "they [we]re drawn to a specific improvement to the way computers operate." *Id.* at 1336. In particular, the unconventional structure of the database resulted in "increased flexibility, faster search times, and smaller memory requirements." *Id.* at 1337. Unlike *Enfish*, nothing in the claims of the '365 Patent shows any unconventional methodology that would amount to a "specific improvement in the way computers operate." *Id.* Therefore, the

focus of the '365 Patent is not "on [a] specific asserted improvement in computer capabilities" but instead "on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1336.

By only claiming the desired result in a functional manner (requesting and receiving address information), Claim 1 of the '365 Patent falls short of claiming eligible subject matter under § 101. *See Internet Patents*, 790 F.3d at 1348; *see also Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016) (holding that claims were directed to an abstract idea where they claimed "the function of wirelessly communicating regional broadcast content to an out-of-region recipient, not a particular way of performing that function"). And because the claimed system is to be implemented without the use of any specialized hardware or software components, the '365 Patent risks preempting all automated methods or systems for sharing address information. *See, e.g., Karamelion, LLC v. Intermatic, Inc.*, No. 20-cv-0639, 2020 U.S. Dist. LEXIS 208220, at *19-20 (N.D. Ill. Nov. 6, 2020) ("The claims-at-issue preempt all wirelessly networked systems of appliance controllers regardless of any particular technological innovations devised to implement them. So broad are its limitations that the claims entangle anyone who seeks to develop such a system no matter how the device interaction is enabled. These claims, if allowed to stand, are mere rent-seeking, and will impede innovation rather than promote it.") (citing *Elec. Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016).

Courts have found similar patent claims to be directed to abstract ideas. Recently, the Federal Circuit held that "[c]ontrolling access to resources is exactly the sort of process that 'can be performed in the human mind, or by a human using a pen and paper,' which we have repeatedly found unpatentable." *Ericsson Inc. v. TCL Commc'n Tech. Holdings*, 955 F.3d 1317, 1327 (Fed. Cir. 2020). The claims here are directed to the request and receipt of address information based

merely on the type of information necessary for identifying what address information has been requested. The claims are thus similar to the claims at issue in *Ericsson*, in that these are precisely the types of activities that can be performed by a human without computers. For instance, a party could call a first friend and ask for a second friend's address or the address of a store. The first friend may retrieve the address, and then provide it the requesting party. Adding the steps of identifying the requested address through a first and second identifier or performing the steps with a server do not add to the abstract idea. Because this process can be performed in a manual fashion, the claims of the '365 Patent are invalid under the same rationale expressed by the Federal Circuit in *Ericsson*.

Additionally, the Federal Circuit has held the following claims directed to various acts of information or data acquisition and transfer (including, among others, acquiring, analyzing, sending, receiving, and publishing data) to be directed to abstract ideas under the *Alice* test:

- Claims directed to **collecting information**, even when such information is of a particular type. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir.2016) (emphasis added).

- Claims directed to **routing information** using result-based functional language. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (emphasis added);

- Claims directed to **transmitting information** about a mail object over a network using a personalized marking, *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 908 (Fed. Cir. 2017) (emphasis added);

- A device used for recording a digital image, storing the digital image, and **transferring** the digital image to a server for further processing, *In re TLI*

*Commc'ns*, 823 F.3d 607, 609 (Fed. Cir. 2016) (emphasis added).

Furthermore, patents related to location information have been found to be directed to the abstract idea of monitoring and communicating information. In *Joao Control*, a court in this District held all claims of an asserted patent ineligible for being directed to the abstract idea of "monitoring and controlling property and communicating this information through generic computer functions." *Joao Control & Monitoring Sys., LLC v. Telular Corp.*, 173 F. Supp. 3d 717, 726 (N.D. Ill. 2016) (agreeing with the reasoning in *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, 100 F. Supp. 3d 405 (D.N.J. 2015) and *MarcoPoint, LLC v. FourKites, Inc.*, No. 15-cv-1002, 2015 U.S. Dist. LEXIS 151045 (N.D. Ohio Nov. 6, 2015)).

Here, the request/receive process of Claim 1 is no different, and in fact reads on the same abstract idea, as the claims analyzed and held invalid in *Joao Control*:

> 30. A monitoring apparatus, comprising:
> a processing device, wherein the processing device receives video information recorded by at least one of a video recording device and a camera, wherein the at least one of a video recording device and a camera is located at a premises, and wherein the processing device is located at a location remote from the premises,
> wherein the processing device receives a signal transmitted from a communication device, wherein the communication device is located at a location remote from the processing device and remote from the premises, wherein the video information is transmitted from the processing device to the communication device in response to the signal, and further wherein the video information is transmitted to the communication device on or over at least one of the Internet and the World Wide Web.

*Joao Control*, 173 F. Supp. 3d at 720 (Claim 30 of U.S. Patent No. 6,587,046).

Claim 1 of the '365 Patent merely replaces the "processing device" for a "server" the "video information recorded by at least one of a video recording device and a camera" for the location information of a "sending positional information device" and then performs the same abstract request/receive of the stored information from the "communication device" (in the claim

11

in *Joao Control*) or the "requesting positional information device" (in the asserted Claim 1).

These types of requesting and receiving are abstract ideas regardless of the information being requested or transmitted. *See e.g., Wireless Media Innovations*, 100 F. Supp. 3d at 413 (invalidating as abstract claims for "monitoring locations, movement, and load status of shipping containers within a container-receiving yard, and storing, reporting and communicating this information in various forms through generic computer functions."). These methods are abstract because the general monitoring and recording functions "could be carried out by human memory, by hand, or by conventional equipment and general purpose computer and printer resources." *Id.* at 415; *see also MacroPoint, LLC*, 2015 U.S. Dist. LEXIS 151045 at *8 (holding claims to be directed to the abstract idea of "tracking freight, including monitoring, locating, and communication regarding the location of the freight.").

The idea underlying Claim 1 of the '365 Patent is just as abstract as those in the *Joao Control, Ericsson*, *Two-Way Media* and *Wireless Media Innovations* claims. As explained earlier, Claim 1 describes a common human activity that can be performed without a computer or specialized equipment. Claim 1 does not include any specific limitations or steps regarding a "specific structure" of computer components used to carry out the abstract idea of requesting/receiving (*i.e.*, sharing) address information. Rather, Claim 1 uses results-based functional language like "sending a request from a requesting positional information device to a server" and "receiving at the requesting positional information device, from the server, a retrieved at least one address" Dkt. 1, Exhibit A at 13:57-63. Claim 1 is abstract because it does "not sufficiently describe how to achieve these results in a non-abstract way." *Two-Way Media*, 874 F.3d at 1337 (holding limitations requiring "sending" and "directing" of information "d[id] not sufficiently describe how to achieve these results in a non-abstract way"). Claim 1 cannot be

12

meaningfully distinguished from the claims in either *Joao Control, Ericsson*, *Two-Way Media*, or *Wireless Media Innovations*.

### B. Claim 1 Does Not Contain an Inventive Concept Amounting to Significantly More Than the Abstract Idea

That Claim 1 is directed toward an abstract idea is not the end of the analysis. Under the second step outlined in *Alice*, the Court must next determine whether the asserted claim contains an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 573 U.S. at 221 (internal quotations omitted). To pass this test, Claim 1 "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotation omitted). Here, Claim 1 is broadly generic and does not contain meaningful limitations that would restrict it to a non-routine, specific application of the abstract idea.

Although the stated goal of the '365 Patent is to provide "remotely entering, storing and sharing location addresses," Dkt. 1, Exhibit A at 2:47-48, not a single technical improvement is disclosed, much less claimed. Instead, Claim 1 is described only at a high level, consisting of generic functional language like "sending a request" and "receiving . . . at least one address." Even the identifying information is claimed in the generalized terms of a "first identifier" and a "second identifier." According to the specification, no specialized hardware or software is needed to send and receive address information (*id.* at 8:23; 12:5) and the first and second "identifiers" may be such generalized broad information as a phone number, IP address, and internet cookies (*id.* at 2:57-59; 10:33-35). In fact, the step of using the first identifier to determine the second identifier is described as "utilize[ing] a **standard database lookup program**, based on the received identifier, to find out information on the user's device including the transmission information for the device which may be the cellular telephone number of the device or a vehicle or internet

13

address (e.g., the IP address) of the device or vehicle." *Id* at 10:40-45 (emphasis added).

While the specification purports to describe the structure of an embedded system capable of sharing address information, nothing in either Claim 1 or the specification discloses how the "positional information device" must be configured in any manner, much less an inventive one. Instead, the claim limitations simply list generic hardware without any improvement in technology. *See In re TLI*, 87 F. Supp. 3d 773, 794 (holding that a "telephone unit limitation is another example of **generic hardware** which does not save Claim 17 because it is **not inventive**") (emphasis added). And the specification fares no better, as the invention is described as "a system and method of programming GPS units from a link on the Global Computer Network (e.g., the Internet) is also provided." Dkt. 1, Exhibit A at 2:49-51. GPS units and the Internet are not novel. *See Rothschild Location Techs. LLC v. Geotab USA, Inc.*, No. 6:15-cv-682, 2016 WL 3584195, at *5, 7 (E.D. Tex. Jan. 4, 2016) ("A GPS device is a well-known generic computer element insufficient to make otherwise patent ineligible subject matter patentable."). Further details are neither claimed nor disclosed.

There is simply nothing "inventive" about using known processes (*e.g.*, the Internet and/or wireless networks) to retrieve address information. *See* Dkt. 1, Exhibit A at 9:38-46 (the invention is "described in the context of the GSM mobile telecommunications standard" but may "relate[] to all telephone standards including, and not limited to CDMA and US-TDMA"). Moreover, the abstract functional descriptions in Claim 1 are devoid of any technical explanation as to how to implement the purported invention in an inventive way. *See In re TLI*, 823 F.3d at 615 (claims failed *Alice's* step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention"). Nothing in Claim 1 requires any inventive algorithm or data

14

structure, much less an improved computer component. *See Wireless Media Innovations*, 100 F. Supp. 3d 405, 416-417 ("[A]dding a computer to otherwise conventional steps does not make an invention patent-eligible. Any transformation from the use of computers or the transfer of content between computers is merely what computers do and does not change the analysis.").

Courts have repeatedly held that the presence of generic hardware and processing like the kind recited in Claim 1 of the '365 Patent does not make an otherwise abstract idea patent-eligible. *See, e.g., buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Two-Way Media*, 874 F.3d at 1339 (finding no inventive concept when "[n]othing in the claims . . . requires anything other than conventional computer and network components operating according to their ordinary functions"); *Wireless Media Innovations*, 100 F. Supp. 3d 405, 416 (finding that the asserted claims "are not tied to any particular novel machine or apparatus, only a general purpose computer, general communication devices, and general vehicles," and the "specific system elements . . . merely require generic computer functions that are not inventive."); *see also Bancorp*, 687 F.3d at 1276-77. In addition, an "abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as [GPS Units]." *Intellectual Ventures I LL v. Capital One Bank U.S.A.*, 792 F.3d 1363, 1366 (Fed. Cir. 2015).

This case is thus unlike *Berkheimer*, where the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). The Federal Circuit examined whether the improvements described in the specification were included in the claims. For those claims where the inventive feature in the specification was "captured in

15

the claims," the Federal Circuit found a "factual dispute regarding whether the invention describe[d] well-understood, routine, and conventional activities." *Id*. But where the claims did not recite the purportedly inventive features described in the specification, the Federal Circuit concluded that they were directed to patent ineligible subject matter under § 101. *Id.* Here, in contrast, there is no need for fact discovery at all because neither the claims nor the specification describes any unconventional components or the use of generic components in some unconventional manner. Rather, the specification specifically notes that the additional elements beyond the mere request/received utilize standard equipment such as GPS units, IP addresses, and "standard database lookup program[s]." The claims therefore fail *Alice's* second step because they contain no inventive features, and no amount of fact discovery can change that.

The recited limitations – whether considered individually or as an ordered combination – are insufficient to add "significantly more" to the abstract idea. Because it is altogether devoid of any "inventive concept," Claim 1 of the '365 Patent is thus patent-ineligible under § 101. *See Alice*, 573 U.S. 225-26.

### C. Claim 1 is Representative and Claims 2-15 Should Also be Held Invalid

A court can determine that all claims of a patent are patent-ineligible under the *Alice* test where one analyzed claim is representative of the rest. *See Alice,* 573 U.S. at 224-25. Here, the remaining claims of the '365 Patent relate to the same abstract concept of requesting and receiving information. The only differences are immaterial in the context of a § 101 analysis. Claims 2-7 each depend from Claim 1 and add immaterial information: Claim 2 merely states that the first identifier is an IP address; Claim 3 merely requires that the address information is transmitted as either longitude/latitude coordinates or (in circular fashion) an address; Claim 4 simply adds that the address is displayed on a map; Claim 5 merely states that the request is received by voice

communication; Claim 6 merely requires that the second identifier is either a mobile phone number or IP address; and Claim 7 merely adds that the address is retrieved from a database on a server. Dkt. 1, Exhibit A at 14:3-20.

The other independent claim, Claim 8, and its dependents fairs no better. Claim 8 is simply an apparatus claim directed toward the same abstract idea as Claim 1, using only conventional components and broad functional language such as "a location information module for determining location information . . . a communication module for receiving the address . . . a processing module configured to receive the address . . . and determine route guidance . . . and a display module . . ." Claim 8 then merely uses these conventional and broadly-functional defined elements to claim a use of the elements similar to the method of Claim 1. Claim 8 is therefore directed to same abstract idea, and there is nothing that adds significantly more to transform the ineligible concept. *Alice*, 573 U.S. at 217-222.

Like the claims that depend from Claim 1, Claims 9-15 similarly add immaterial information to the abstract apparatus described in Claim 8: Claim 9 merely states that the first identifier is either a mobile phone number or IP address; Claim 10 merely requires that the address information is transmitted as either longitude/latitude coordinates or (in circular fashion) an address; Claim 11 merely simply adds that the address is displayed on a map; Claim 12 merely states that the communications network is a telematics network; Claim 13 merely requires that the second identifier is either a mobile phone number or IP address; Claim 14 merely adds that the address is retrieved from a database on a server; and Claim 15 merely states that the server is operated by a live operator who receives the request by voice communication. Dkt. 1, Exhibit A at 14:47-15:4. In fact, Claim 15 succinctly demonstrates why the claims of the '365 Patent are

17

abstract because it specifically claims that the process can be carried out by a person receiving voice communications (*i.e.*, calling a friend and asking them to look up information for you).

Claiming variations related to the type and source of information is not inventive. Nor is the identification of additional generic components – particularly because there is no disclosure of how any of the generic components (*e.g.*, telematics network) must be configured in any "inventive" manner to accomplish the desired results. *See Internet Patents*, 790 F.3d at 1348. Accordingly, Claims 2-15 are no more inventive than Claim 1 and all claims of the '365 Patent are directed to the same abstract idea and fail to add any inventive features or render the claims any less abstract. Regardless of their form, therefore, all of the claims of the '365 Patent fail both prongs of *Alice* and must be held invalid. *Alice*, 573 U.S. at 217-222.

## IV. CONCLUSION

For the foregoing reasons, Defendant LandAirSea Systems. Inc. respectfully requests that the Court hold that all claims of U.S. Patent No. 9,261,365 are invalid as being directed toward nonpatentable subject matter and dismiss the Complaint filed by Plaintiff Social Positioning Input Systems, LLC in its entirety. Because leave to amend would be futile, Defendant also requests that the dismissal be with prejudice.

DATED: December 27, 2021                                   Respectfully submitted,

/s/ Edward L. Bishop
Edward L. Bishop
ebishop@bdl-iplaw.com
Benjamin A. Campbell
bcampbell@bdl-iplaw.com
BISHOP DIEHL & LEE, LTD.
1475 E. Woodfield Road, Suite 800
Schaumburg, IL 60173
Telephone:    (847) 969-9123
Facsimile:    (847) 969-9124

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system this December 27, 2021. Any other counsel of record will be served by electronic and/or first-class mail.

/s/ Edward L. Bishop
Edward L. Bishop